**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David Swain, | No. CV-24-01495-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Nationwide General Insurance Company, | |
| Defendant. | |

Plaintiff David Swain has filed three actions arising from the same underlying insurance dispute. The first two attempts failed, and here, the third time is not the charm. Before the Court is Defendant Nationwide General Insurance Company's Motion for Summary Judgment. (Doc. 34.) The Court has considered the briefs (Docs. 34-36) and will grant the Motion.

I.     **BACKGROUND**

Swain purchased a homeowners' insurance policy with Defendant Nationwide for the policy period from August 1, 2020, through August 1, 2021 (the "Policy"). (Doc. 34-1.) The Policy has two provisions of note. First, it states that Nationwide does not insure "for loss . . . [c]aused by . . . [w]ear and tear, marring, [and] deterioration." (*Id.* at 24-25.) The Policy also provides that "[n]o action can be brought against [Nationwide] unless . . . the action is started within two years after the date of loss." (*Id*. at 34.)

Swain alleges that his home's roof was damaged by a wind and/or hailstorm on August 20, 2020. (Doc. 12 ¶¶ 1, 6.) On July 4, 2021, he retained ProWest LLC to assist

with presenting a property-damage claim to Nationwide. (Doc. 35-10.) ProWest later inspected the roof and documented damage. (Doc. 35-8.) Nationwide retained Knott Laboratory LLC, which inspected the roof and concluded the damage was inconsistent with wind damage and resulted from normal wear and tear. (Doc. 34-3 at 7.)

In September 2021, Nationwide denied coverage and provided the Knott report to Swain's representative. (Docs. 34-4; 35 at 2.) A few weeks later, Nationwide received a letter from counsel for ProWest stating that ProWest was the assignee of Swain's insurance claim arising from the August 20, 2020 loss. (Docs. 34-5; 35 at 2.) Counsel enclosed an Assignment of Insurance Benefits and Insurance Claim Agreement signed by Swain on October 7, 2021. (Doc. 34-5.)

In April 2022, Nationwide denied ProWest's claim and again stated that the claimed damage was not covered because it resulted from wear and tear. (Doc. 34-9.) In August 2022, Nationwide received correspondence from Swain's counsel stating that counsel represented Swain regarding the same August 20, 2020 property-damage claim. (Doc. 34-10.)

In September 2023, Swain sued Nationwide in Arizona Superior Court for breach of contract, bad faith, and appraisal-related relief. Nationwide removed that case to this Court, and Judge Logan dismissed it without prejudice for lack of subject matter jurisdiction on the assignment issue. *See Swain v. Nationwide Gen. Ins. Co.*, No. CV-23-02176-PHX-SPL (Doc. 28). Judge Logan concluded that Swain lacked standing because the attempted cancellation of the assignment was untimely and that Swain could not unilaterally cancel it. *Id.*

In February 2024, Swain filed a second state-court action seeking to compel appraisal. *See Swain v. Nationwide Gen. Ins. Co.*, No. CV 2024-003029 (Ariz. Sup. Ct. Apr. 26, 2024) (minute entry). The court denied that request, finding the dispute concerned coverage rather than the amount of loss. *Id.*

After the first lawsuit was dismissed, Swain produced a second document purporting to cancel an agreement with ProWest, dated September 2, 2022, and signed by

both him and a company representative of ProWest named Amanda Bodine in November 2023. (Docs. 34-15; 35-7.)

In May 2024, Swain filed this action in Arizona Superior Court, and Nationwide again removed it to this Court. (Doc. 1.) His original complaint asserted claims for breach of contract (failure to tender insurance benefits), breach of contract (failure to participate in appraisal process), breach of the duty of good faith and fair dealing, and declaratory judgment. (Doc. 1-1 ¶¶ 25-55.) Nationwide moved to dismiss the breach of contract claim for failure to participate in appraisal (Doc. 7), which the Court denied as moot after it granted Swain leave to amend his complaint (Doc. 11).

The Amended Complaint asserts claims for breach of contract, breach of the duty of good faith and fair dealing, and declaratory judgment. (Doc. 12 ¶¶ 25-47.) Nationwide now moves for summary judgment. (Doc. 34.)

## II.    LEGAL STANDARD

Summary judgment is appropriate when the evidence, viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At the summary judgment stage, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citation omitted); *see also Jesinger v. Nev. Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994) (holding that the court determines whether there is a genuine issue for trial but does not weigh the evidence or determine the truth of matters asserted).

A federal court sitting in diversity applies state substantive law and federal procedural law. *See Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1995). Thus, this Court applies Arizona law to the interpretation of the insurance contract at issue. *See Benevides v. Arizona Prop. & Cas. Ins. Guar. Fund,* 184 Ariz. 610, 613 (App. 1995).

## III.    DISCUSSION

Nationwide moves for summary judgment on the grounds that Swain lacks standing to sue Nationwide because he assigned his claims to ProWest and that the claims are barred by the Policy's contractual limitations provision. (Doc. 34 at 9-16.) Swain argues that he has standing because he terminated the assignment to ProWest and that the contractual limitations provision should not be enforced because Nationwide cannot demonstrate prejudice resulting from any delay in filing suit. (Doc. 35 at 7-15.) The Court begins with the standing issue.

### A.    Standing

The plaintiff invoking federal jurisdiction bears the burden of establishing standing. *See Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 654 (9th Cir. 2002). A plaintiff's standing to bring a claim is a threshold issue that must be resolved before reaching the merits of his claim. *See id.* at 653-54.

To have standing to sue in federal court, a plaintiff must meet the "Case or Controversy" requirement of Article III of the Constitution. U.S. Const. Art. III, § 2. That is, a plaintiff must allege "'such a personal stake in the outcome of the controversy' as to warrant his invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975).

Here, Nationwide argues that Swain lacks standing to pursue these claims because he assigned them to ProWest. (Doc. 34 at 10.) Therefore, the question here is who owns the claims at issue: ProWest or Swain.

An insured may assign, "after a loss occurs," a "claim under, or a right of action on, the policy." *Farmers Ins. Exch. v. Udall*, 245 Ariz. 19, 22 (App. 2018) (quoting *Aetna Cas. & Sur. Co. v. Valley Nat'l Bank of Ariz.*, 15 Ariz. App. 13, 15 (1971)). "The assignee then 'stands in the shoes' of the assignor, taking his rights and remedies as described in the assignment, subject to any defenses which the obligor or debtor has against the assignor prior to notice of the assignment." *Id.* at 23 (quoting *Van Waters & Rogers, Inc. v. Interchange Res., Inc.*, 14 Ariz. App. 414, 417 (1971)).

It is undisputed that on October 7, 2021, Swain signed an Assignment of Insurance Benefits and Insurance Claim Agreement (the "Assignment Agreement") assigning to ProWest "all of [his] rights, interests and benefits" in the wind-damage claim at issue here. (Docs. 35 at 8-9; 34-5; 12 at 3 ¶ 13.) Swain contends, however, that the Assignment Agreement was later cancelled. He argues that the Assignment Agreement was merely an addendum to an earlier contract with ProWest and that cancellation of that underlying contract necessarily cancelled the Assignment as well. (Doc. 35 at 8-9, 15.) He further relies on a later document purporting to cancel a contract with ProWest (the "Termination Agreement"). (*Id.* at 9.)

Nationwide responds that the Assignment Agreement permitted cancellation only if Swain cancelled it in writing within five days of execution and that Swain has produced no evidence that anyone cancelled the Assignment Agreement within that period. (Docs. 34 at 10, 12; 36 at 3.) The Assignment Agreement specifically provides that "[t]he Client has 5 days to cancel this assignment so long as the cancellation is in writing and delivered to the Client's office by certified mail within that time." (Doc. 34-5 at 5.) Nationwide further argues that the Termination Agreement refers only to a separate September 2, 2022 contract for roofing services and does not reference the Assignment Agreement. (Doc. 36 at 1, 4-5.)

The Court agrees with Nationwide. In the first lawsuit arising from these same underlying facts, Judge Logan considered Swain's prior attempt to show cancellation of the Assignment Agreement and rejected it. *See Swain*, No. CV-23-02176-PHX-SPL (Doc. 28). There, Judge Logan held: "[u]pon reviewing this document, the Court is not convinced that it is a valid cancelation [because] [t]he cancelation policy provided under the Assignment Agreement states that '[Plaintiff] has 5 days to cancel this assignment so long as the cancellation is in writing.'" *Id.* at 4-5. Judge Logan further found that "Plaintiff's attempt to cancel the assignment is untimely because it is dated more than two years after the Assignment Agreement." *Id.* at 5. Swain attempts to distinguish this case by offering a different cancellation document than the one presented in the prior action.* But

---

* The Court notes the difference between the cancellation document presented in the prior action and the one offered here. In the first lawsuit, the document purported to terminate

the same defect remains here.

Even construing the evidence in the light most favorable to Swain as the non-moving party, no reasonable juror could find that the Assignment Agreement was timely cancelled. Swain does not dispute that the Assignment Agreement required cancellation within five days, and he offers no evidence that any cancellation occurred within that period. *See Blackmore v. Honnas*, 141 Ariz. 354, 356 (App. 1984) ("[I]f the agreement is not cancelled as required by its terms, it may continue to be viable."); *N. Ins. Co. of New York v. Mabry*, 4 Ariz. App. 217, 219 (1966) ("[A]n insurance contract can only be cancelled pursuant to its terms or by mutual consent."). That alone defeats Swain's cancellation theory.

Swain's alternative argument—that cancellation of the July 4, 2021 work order also cancelled the Assignment Agreement—fares no better. Swain argues that because his July 4, 2021 "contract or 'work order'" with ProWest was cancelled, "any assignments arising therefrom were also cancelled." (Doc. 35 at 15.) But Swain identifies no evidence connecting the Assignment Agreement to the July 4, 2021 work order, and nothing on the face of the Assignment Agreement ties it to that work order. (Doc. 34-5 at 5.)

The Termination Agreement does not fill that gap. It does not mention the Assignment Agreement and instead states that it terminates "the contract made between the parties on the date listed above, involving roofing services." (Doc. 35-7.) The date listed above is September 2, 2022—not July 4, 2021 or October 7, 2021. (*Id.*) The Court will not rewrite the plain terms of the Termination Agreement to cancel contracts or assignments it does not identify. *See Emps. Mut. Cas. Co. v. DGG & CAR, Inc.*, 218 Ariz. 262, 267 (2008) ("When 'the provisions of the contract are plain and unambiguous upon their face, they must be applied as written, and the court will not pervert or do violence to the language used, or expand it beyond its plain and ordinary meaning or add something to the contract

the agreement "as of 11/30/2023" and was not signed by Amanda Bodine. *See Swain*, No. CV-23-02176-PHX-SPL (Doc. 26-2). Here, the document states that "the Contract is to be terminated as of 09/02/2022" and was signed by Bodine in November 2023. (Doc. 35-7 at 2.) This distinction does not alter the analysis for the reasons explained above.

which the parties have not put there.'" (quoting *D.M.A.F.B. Fed. Credit Union v. Employers Mut. Liab. Ins. Co.*, 96 Ariz. 399, 403 (1964))).

The relationship between the July 4, 2021 work order and the Assignment Agreement is a matter of contract interpretation for the Court to decide. *See Kintner v. Wolfe*, 102 Ariz. 164, 167 (1967) ("The general rule is that the interpretation of a contract is a question for the court."); *Treadway v. W. Cotton Oil & Ginning Co.*, 40 Ariz. 125, 128, 136-39 (1932) (stating that "the sole question" before the court was "one of law, involving the construction of two contracts" and construing the relationship between an underlying contract and later assignment agreement by examining the face of both agreements). Looking to the face of the documents, the July 4, 2021 work order and the October 7, 2021 Assignment Agreement are separate agreements. The work order concerned roofing services, while the Assignment Agreement transferred Swain's insurance rights to ProWest and contained its own cancellation provision. (Docs. 35-10; 34-5 at 5.)

On this record, no reasonable juror could conclude that the Termination Agreement cancelled the Assignment Agreement. *See Bender v. Bender*, 123 Ariz. 90, 93 (App. 1979) ("[I]n the absence of fraud, a court must give effect to the contract as it is written, and the terms or provisions of the contract, where clear and unambiguous, are conclusive.").

The deposition testimony of ProWest employee Amanda Bodine supports that conclusion. When asked to identify the contract referenced in the Termination Agreement, Bodine testified that it related to a specific job contract dated September 2, 2022, and clarified that it was "just canceling the original contract" and that she did not believe it had "anything to do with the assignment of benefits." (Doc. 34-20 at 9.) Although Swain suggests the form of the questioning was improper (Doc. 35 at 11), the testimony reflects the witness's understanding of which contract was being terminated and does not establish that ProWest agreed to cancel the assignment. At most, Bodine testified that she was "not sure" whether the assignment was affected, which is insufficient to create a genuine dispute of material fact. *See, e.g.*, *Ass'n of Unit Owners of Nestani v. State Farm Fire & Cas. Co.*, 670 F. Supp. 2d 1156, 1161 (D. Or. 2009), *aff'd sub nom. Ass'n of Unit Owners of*

*Nestani-A Grecian Villa v. State Farm Fire & Cas. Ins. Co.*, 434 F. App'x 579 (9th Cir. 2011) ("[A witness's] speculative deposition testimony does not create a genuine issue of fact for summary judgment."); *Olvera v. Cnty. of Sacramento*, 932 F. Supp. 2d 1123, 1150 (E.D. Cal. 2013) (noting that equivocal deposition testimony, without more, did not create a genuine issue of material fact to defeat summary judgment).

Swain also offers a February 27, 2025 email from ProWest President Billy Hakenson stating that "Amanda Bodine sent and signed a cancellation form on 11/29/23 due to us not having the ability to move forward with Mr. Swain's project. Amanda had authority to cancel Mr. Swain's contract." (Doc. 35-3.) But, as Nationwide notes, "there is nothing in that email that says anything about ProWest agreeing to cancel the Assignment." (Doc. 36 at 7.) And in any event, the email is unsworn and insufficient to create a genuine issue of material fact under Rule 56. *See* Fed. R. Civ. P. 56(c)(1)(A); *Jones v. Williams*, 791 F.3d 1023, 1032 (9th Cir. 2015).

Regardless, even if the Termination Agreement were valid for the reasons Swain advances, those arguments do not overcome the untimeliness of the attempted cancellation under the Assignment Agreement. The record contains no evidence that the Assignment Agreement was cancelled within the required five-day period or that ProWest agreed to waive that requirement.

The Court finds that the October 7, 2021 Assignment Agreement remains valid. Because Swain assigned "all of [his] rights, interests and benefits" in the insurance claim to ProWest, he no longer owns the claims at issue and lacks a sufficient personal stake to maintain this action. *See Udall*, 245 Ariz. at 23; *Quiroga v. Allstate Ins. Co.*, 151 Ariz. 127, 130 (App. 1986) (affirming summary judgment where the plaintiffs had assigned their entire claim and therefore retained no cause of action to assert and finding no genuine issue of fact as to the scope or effect of the assignment). This jurisdictional defect is dispositive of all claims asserted in the Amended Complaint, each of which arises from the assigned insurance rights. Summary judgment is therefore appropriate on this ground alone.

. . . .

### B.    Contractual Limitations Period

In light of the parties' full briefing on Nationwide's statute-of-limitations argument, the Court addresses that issue in the alternative. "Because an insurance policy is a contract, 'the terms of the policy must govern.'" *Cravens v. Montano*, 259 Ariz. 444, 448 (2025) (quoting *Apollo Educ. Grp., Inc. v. Nat'l Union Fire Ins. Co.*, 250 Ariz. 408, 411 (2021)). Ordinarily, the statute of limitations for breach of a written contract is six years. A.R.S. § 12-548. However, "[s]ubject to statutory limitations, parties to an insurance contract may limit the time within which an action on the policy may be brought." *Shea N., Inc. v. Ohio Cas. Ins. Co.*, 115 Ariz. 296, 298 (App. 1977). Under A.R.S. § 20-1115(A)(3), such limitations are permissible so long as they are not reduced below two years for the type of insurance at issue here.

Nationwide contends that Swain's claims are barred by the Policy's two-year limitations provision, which requires that any action be "started within two years after the date of loss." (Doc. 34-1 at 34.) Because the alleged loss occurred in August 2020 and this action was filed in May 2024, Nationwide argues the claims are untimely. (Doc. 34 at 12-13.)

Swain does not dispute the validity of the contractual limitations provision but argues that Nationwide must show prejudice resulting from the delay. (Doc. 35 at 13.) Arizona law recognizes that although such provisions are enforceable, an insurer may be estopped from relying on them where enforcement "would work an unjust forfeiture." *Zuckerman v. Transamerica Ins. Co.*, 133 Ariz. 139, 146 (1982). The "key inquiry" is whether the insurer was prejudiced by the delay. *Shumway v. Allstate Vehicle & Prop. Ins. Co.*, No. CV-23-00699-PHX-DLR, 2024 WL 3376087, at *4 (D. Ariz. July 11, 2024) (citing *Zuckerman*, 133 Ariz. at 146).

Nationwide has made that showing. It argues that the nearly four-year delay in filing suit rendered this a stale property-damage claim. (Doc. 36 at 11.) In particular, Nationwide notes that the roof was not evaluated in the context of this litigation until years after the alleged August 2020 storm, following "five monsoon seasons, countless storms and five

- 9 -

years of natural deterioration." (*Id.*) According to Nationwide, this passage of time impaired its ability to determine whether the claimed damage resulted from the August 2020 event or from subsequent weather and ordinary wear and tear. (*Id.*)

This is the type of prejudice Arizona courts recognize. Contractual limitations provisions are designed to protect insurers from stale claims where delay makes it more difficult to evaluate causation and damages. *See Zuckerman*, 133 Ariz. at 143, 146. Courts have likewise found prejudice where delay deprives an insurer of the ability to conduct a contemporaneous investigation of evolving property damage. *See Nguyen v. Am. Fam. Mut. Ins. Co.*, No. CV-12-2103-PHX-SMM, 2014 WL 4448410, at *8-9 (D. Ariz. Sept. 10, 2014). Unlike in *Zuckerman*, where there was no dispute regarding coverage, causation, or the amount of loss, this case turns on a contested question of causation that is directly affected by the passage of time. *See Zuckerman*, 133 Ariz. at 147. Enforcing the contractual limitations provision under these circumstances does not work an unjust forfeiture.

Swain's response does not alter that conclusion. He argues that Nationwide cannot establish prejudice because the claim was reported in July 2021, the property was inspected shortly thereafter, and both parties have retained experts. (Doc. 35 at 14.) But that argument conflates an initial claim investigation with the ability to defend a lawsuit filed years later. The relevant inquiry is whether the delay in filing suit impaired Nationwide's ability to defend this action, not whether it conducted an earlier inspection. *See Zuckerman*, 133 Ariz. at 146.

Here, Nationwide has shown that the delay made it more difficult to distinguish between damage attributable to the August 2020 storm and damage resulting from subsequent events or deterioration. The existence of earlier inspections and expert opinions does not eliminate that concern, particularly in a case involving roof damage where causation may evolve over time.

Accordingly, even if Swain could pursue this action, his claims would be barred by the Policy's two-year limitations provision. Summary judgment would be granted on that alternative basis.

## IV.    EVIDENTIARY OBJECTIONS

In Swain's response brief to the motion for summary judgment, Swain objected to Exhibits 2 through 19 of Nationwide's Motion as not properly authenticated and as inadmissible hearsay. (Doc. 35 at 6-7.) The Court then ordered Nationwide to submit an affidavit or declaration establishing the authenticity of the contested exhibits. (Doc. 41.) Nationwide filed an affidavit from a claims manager, Kevin Slish, who states he is a "custodian of records" for this matter. (Doc. 42-1 ¶ 1.)

Swain again objected because Nationwide never disclosed Kevin Slish as a person with knowledge, the affidavit failed to address Exhibits 6 and 16 through 19, and the affidavit contained "inadmissible hearsay." (*See* Doc. 43.)

The Court will overrule Swain's objections. The Court adopts the reasoning from *Enriquez v. Gemini Motor Transport LP*, No. CV-19-04759-PHX-GMS, 2021 WL 5908208 (D. Ariz. Dec. 14, 2021), as to Swain's objection regarding the disclosure of Kevin Slish. In *Enriquez*, the plaintiff moved to strike a declaration submitted in support of a motion for summary judgment because the defendant failed to disclose the identity of the declarant. *Id.* at *3. There, the court decided to consider the declaration "to the extent it authenticate[d] evidence and establishe[d] [the declarant's] personal knowledge," because while the declarant's name was not disclosed, the defendant disclosed a "HR Representative . . . to lay foundation for Defendant's file and documentation." *Id.* Therefore, "it should [have been] of no surprise to Plaintiff that an HR representative would lay a foundation for Defendant's evidence." *Id.*

The same is true here. That Nationwide did not specifically disclose Mr. Slish does not warrant exclusion. Mr. Slish is a custodian of records, and Nationwide disclosed "[a]ll custodians of records or other witnesses necessary to establish the foundation for admission of evidence in this matter." (Docs. 42-1 ¶ 1; 43-3 at 3.) It should therefore be "of no surprise" that Nationwide would rely on a custodian of records to "lay a foundation" for its evidence.

Further, the Court will disregard Swain's objection as to Exhibit 6 because it did not

consider that exhibit to resolve the present Motion. And Swain's objections to Exhibits 16 through 19 are otherwise immaterial because the Court can take judicial notice of records from this Court and the Arizona Superior Court. *See U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (noting that courts may judicially notice court documents "both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." (citation omitted)).

Finally, the Court overrules Swain's hearsay objections. To the extent there is any hearsay, Swain fails to show that Nationwide could not present such evidence in admissible form at trial. *See Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 666-67 (9th Cir. 2021) ("If the contents of a document can be presented in a form that would be admissible at trial—for example, through live testimony by the author of the document—the mere fact that the document itself might be excludable hearsay provides no basis for refusing to consider it on summary judgment."); *see also City of Lincoln v. Cnty. of Placer*, 668 F. Supp. 3d 1079, 1087 (E.D. Cal. 2023) ("Courts also often overrule hearsay objections at summary judgment.").

## V.    CONCLUSION

**IT IS THEREFORE ORDERED granting** Defendant Nationwide's Motion for Summary Judgment (Doc. 34). Swain's claims are dismissed with prejudice.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment consistent with this Order and close this case.

Dated this 11th day of May, 2026.

Michael T. Liburdi
United States District Judge

- 12 -